May it please the court. Cheryl Gordon-McLeod on behalf of Mr. Gallup. No court has ever ruled that restitution outlasts supervised release when the sentencing judge said that it does not. And no court has ever ruled that restitution must be deemed to have been imposed by a mandatory separate restitution order over and above supervised release for the 1989-1990 time period when the sentencing judge herself did not so order. I believe that the question presented by the government's position in this case is whether this court should be the first to take those positions. I'm going to start by reference to the transcript, and I'm talking here about excerpts of record pages 98 to 101, which was the sentencing transcript. And in it no less than three times the sentencing judge indicated that restitution would last as long as supervised release and no longer. The first time begins at the bottom of page 98 with her statements. She's imposing supervised release. It's subject to conditions. One of those is restitution. I will require that the restitution be included in the supervised release in the amount of $6 million. And then she goes on to utter the phrase that the government is clinging to. He should pay it after he gets out as well as begin paying it when he's incarcerated. Well, the court continued on page 99 of the excerpts of record in response to a question. I will set out the amount that is due, quote, and obviously at the end of the supervised release he will pay what he could have paid and that will be the end of it, close quotes. So that's the second time that she indicates in response to a question that restitution ends when And the third time is on the very final page of the transcript when the probation officer informs the judge that he thinks that she can't order five years of supervised release, that it would be an upward departure. She says, well, I'll make a finding then. And the finding is, quote, I think five years is more realistic for meaningful restitution than is three years. So we have three separate times that she said on the record that restitution ends with the end of supervised release. And we have the controlling rule in this circuit that the sentence is what the sentencing judge says in open court from the bench to the defendant. Subjective intent of the judge is irrelevant. That's the Bergman and the Munoz-De La Rosa cases. Whether the judge made a mistake in uttering the sentence is irrelevant. Again, that's the Bergman and the Munoz-De La Rosa cases. And this court specifically  they misstate what they meant at the sentencing proceeding. Nevertheless, what the judge says of sentencing controls if it's a legal sentence. And I think here we get to the heart of what the government's argument is, as I understand it, which is that it's not a legal sentence. Now, my understanding of the restitution statutes is that there's two separate sources of authority for a restitution order. And there were in 1989 and 1990 when these crimes were committed, two separate sources of authority for a restitution order. The first was the sentencing court's discretionary authority to order restitution as a condition of supervised release. And that was 18 U.S.C. 3583, which incorporated by reference 18 U.S.C. 3563. And that's what was done here. The other separate source of the district court's authority at that time to impose restitution was 18 U.S.C. 3663, which is sometimes referred to in our briefs as 3579 because that was the predecessor statute. Sotomayor, if 3663 applies, either by incorporation, by reference, or more directly, do you lose? Did you ask if 3663 applies? Correct.  I think that's the end of my argument, because I recognize that that does incorporate the lien provisions that the government refers to. I think the point in this case is that the — that's not what the judge did, number one. And number two, she didn't have to issue a 3663 order. I think the government's argument is that she had to issue a 3663 order. But if you look at 3663, I think that's the end of my argument. If you look at 3663 or its predecessor, 3579, it uses the word may. When the court is imposing — and this is in the very first paragraph of that statute — when the court is imposing sentence, it may order that separate order — enter that separate order of restitution. Now, the government never cites to a statute that supposedly makes a separate order of restitution mandatory. If you look at its brief on page 16, what they're citing to is a guideline, 5E1.1. And it's only the guideline, not 3663, that says that the court has to impose a separate order of restitution. And, of course, guidelines aren't mandatory. Guidelines can be departed from. The court in this case even departed from the sentencing guidelines by making her finding on page 101 of the excerpts of record. And, of course, following Booker, we know that they're advisory only. So I think we're left with a record in which the judge chose to impose restitution in one way, solely as a condition of supervised release. She was permitted under the statutes in 1989 and 1990 to do so. The government discusses the Fenner case, a Ninth Circuit case, at length in opposition to our argument that the judge's intent, subjective intent, doesn't matter. Fenner does make subjective intent relevant, but only in three situations. If the court's order was illegal — and I think, as I've said, the court's order was not illegal — if the court's order was irrational or absurd — and I have to here point you to the legislative history of the restitution statutes, which are discussed in the Rostoff case at footnote 4 that's cited by both parties, where it says that even Congress recognized that in certain situations there should be a limit on the duration of restitution serving the different purposes of sentencing. Let me address an issue that's been of concern to me to give you — to hear your thoughts on. It's hard for me to see how the initial sentence could be viewed as limiting restitution to a period of supervised release if it's also clear on the face of the transcript of the sentencing that the restitution was supposed to start before the supervised release. So it's hard for me to view it as sort of a condition of supervised release. And, you know, if I view that oral sentencing transcript as ambiguous, then it seems to me, here with someone who committed a fraud that, you know, took, what, $6 million or whatever from public people who paid premiums, if there's any chance that he might have property that came from the fruits of the fraud that should be subject to a lien, you know, why shouldn't I interpret an ambiguity in favor of the government? Well, two reasons. The first is the rule that if the verbal sentence is ambiguous, then we next look to the written judgment. In this case, I don't think it gets us very far. It does have a restitution order, but also on the supervised release order, when the judge explains why she's going up to five years, she says it's to give the defendant the time to pay the restitution. So if we have two ambiguities, I think the rule that applies is you resolve the ambiguity in favor of the defendant. And the case I'm looking for that is I've cited United States v. Chiarella in the briefs. It's a Second Circuit case. It arose in the situation, it's the rule that where the sentencing judge is silent about consecutive or concurrent, then the presumption is concurrent. And it cites to Ninth Circuit cases beforehand that had said that, and of course, there's Ninth Circuit cases to date that still say that. I believe that that is necessarily based on the notion that if the transcript is ambiguous, you go with what's more lenient for the defendant rather than what's more onerous for the defendant. And there's no source of law that I'm aware of that says that you interpret the transcript in favor of the government in a criminal case. And this is the Second Circuit case that's in your brief? Yes. It's United States v. Chiarella. It is in our brief, and it's at 214 F. 2nd, 838.  And I'll reserve my 15 seconds for it. I want to just ask you another question. At the time that your client was sentenced, what property did he own? I don't know the specific answer to that, but there was a finding on the record at sentencing that he did not have the ability to pay the fine. And so the judge waived the requirement of paying the fine. So from that, I glean that there was very little. Well, there was a lien on property, right? And he asked that there be a release of lien on his property. Well, I think the question is whether the lien... At the end. At the end, after he completed his probationary period. Well, I think the question is whether the lien automatically arises under 3663 in favor of the government because of the existence of a separate restitution order over and above supervised release. Well, was there any property for a lien to alight on? Not that I'm aware of. And again, as I say, since the transcript shows that there was a finding that he had no ability to pay any fine, I'd venture to say that the answer is no, but I don't know that for a fact. Does the record show, if I recall this right, it was a $6 million fraud total with more than your client involved in it in terms of persons? Correct. And then there was some evidence that $800,000 or so had gone to him, had been diverted to him? Your Honor, I don't recall the amount. The restitution was made joint in several in his case as well as in the case of the two co-defendants. Okay, so it was joint in several restitution against everyone in the scheme that was convicted? Correct. Got it. Thank you very much. Thank you, Your Honor. Good morning. May it please the Court, Mark Bartlett on behalf of the United States Department of Justice, I'd like to ask you a question on the pre-sentence report. It will indicate that they attributed at least $800,000 of the $6 million fraudulent scheme going into Mr. Gallup's pocket during the scope of the conspiracy. So did he have property purchased? I mean, does the record show that? I also think if you look at the pre-sentence report, you will see that this 800,000 was basically gone by the time sentencing occurred in 1993. Counsel, let me just start by telling you what my problem is with your position in this case. It seems to me that the restitution would have had to be under 3663 because all the other statutes seem to say that's how it works, and that the trial judge was wrong in her oral pronouncement. Well. But here's my question. If she was wrong, the government had the opportunity to appeal, as did the defendant, because the trial judge also was mistaken in not figuring ability to pay, which is a requirement of the statute. So the sentence was wrong from several perspectives, but nobody appealed, and so wrong or not, why isn't everybody just stuck with whatever it is? Well, I would agree, Your Honor, except for one part of your question, and the part that I disagree with is that the sentencing was wrong. I think they're both – Mr. Gallup is focused on what Judge Dimmick said at the time of sentencing, and they're just misinterpreting what she said. What Judge Dimmick was talking about was that at the end of her supervised release, that will end the probation office hounding him to pay money on a monthly basis, that if he fails to pay, he, in fact, might be revoked and go back to jail. That's what she should have said, but as I read it, that isn't what she said. Well, if you look at exact – If you look at it sort of functionally, she's responding to his request for ability to pay, and her basic response is, well, it doesn't really matter if you can pay or not, because it's going to end soon, and you'll never get to the $6 million. And I would submit to the Court what she actually says – and I'm quoting right now – in response to the question from Jim Rowe, who was at Gallup's counsel at that point in time, quote, And obviously, at the end of that supervised release, he will pay what he could have paid, and that will be the end of it. As I read that, Your Honor, I suggest a rational and reasonable explanation is, and that will be the end of it, refers to that will be the end of your term of probation, and the end of having a probation officer do it. That will be the end of paying. That will be the end of it. That – Your Honor, I would submit that there is ambiguity there. If you look at when Chief Judge Lassnick considered this, he, quote, made a ruling that it was unclear. That is the factual determination from the district court. Well, let's assume we disagree with that, that we read the sentencing transcript as having been clear but wrong. Are you stuck? If it was clear but wrong and not a penal? Well, I would suggest to the Court that if you look at – if you're saying that in your mind that there is absolutely no doubt that this – she was trying to end restitution, I would suggest that there actually is, as counsel conceded. There were other statements made by Judge Dimmick during this hearing that indicated he had to pay restitution afterwards. So I would think at best all Mr. Gallup can say is the oral statements were in conflict with each other. And if they're in conflict, you go to the written state. Written judgment and commitment. And when you look at the written judgment and commitment, there is, in fact, a very clear statement. If you look at the supervised release, and I'm quoting from the written judgment and commitment, quote, "'If this judgment imposes a restitution obligation, it shall be a condition of supervised release that the defendant pay any such restitution that remains unpaid at the completion of the term of supervised release.'" It's in the written J&C. Right. Of course, we only get to the written one, I guess, if the oral one is ambiguous. Correct. Because the precedent says the oral control. No. And we – So what are the oral statements, other than the – other than that will be the end of it, what are the oral statements that, in your opinion, or the government's position, create an ambiguity? Well, I think the oral statements that when Mr. Roa asked for leniency, what the Court responds with is she goes to the high end of the sentencing guideline range, which was 97 months. When they asked for a more reasonable amount of restitution, they, in fact, imposed a full amount of restitution. And I assume the Court is aware that when counsel talks about the may in 3663, the may refers to the Court at that point in time had the ability not to impose full restitution or partial restitution. But if it chose to do that, the Sentence Reform Act required that it state on the record its reason for not imposing restitution. And since there's no statement on the record, the clear holding of the Court was that 3663 applies. And as counsel conceded, if it applies, then that sentence, at the time that      And I think the Court has to say that the leniency goes on behalf of the judge, on behalf of the United States, and on behalf of the victim. Let me ask you. What's going on behind all this? I think what's going on behind it, Your Honor, is that Mr. Gallup stole $6 million. Let me ask you that. Does he have money now? I would submit to the Court that it is a reasonable inference that Mr. Gallup is only required to pay $50 a month. He has paid less than $3,000 total in the 12 years he's had restitution, yet he has hired an attorney to get off a supervisory lease. He's hired an attorney to challenge the lien, and he's hired an attorney to get this case in front of this circuit. So clearly, in Mr. Gallup's mind, I would submit he knows that at some point in time, either through inheritance or sale of property, he's going to get some money. Otherwise, none of this legal action makes any sense from an economic point of view. And he's got a what? Inheritance. Inheritance. Something coming down the line. Otherwise, from an economic point of view. Are you just speculating on that? I am. I thought that's what the Court asked. Well, you're the government. You can investigate these things. You can find out. And, Judge Gould, getting back here, I don't have the Court for that. But why didn't the U.S. attorney or the assistant, when this sentence was imposed, get up and say something to the judge? Well, Your Honor, do you have in mind that restitution is going to be cut off at the time supervised release ends? In hindsight, perhaps they should have, Your Honor. Well, that's your job, isn't it? It is, Your Honor. All right. So were you there at the time? I wasn't, Your Honor. That was now currently Judge Harry McCarthy was the sentencing judge. I assume at the point in time, Your Honor, the real focus of the sentencing was the amount of imprisonment since the government was asking for over 97 months and the defendant was asking for 41 months. But I'm just speculating to the Court. Well, then, how much money was collected with all the defendants? I don't have that, Your Honor. I know that the restitution amount with regard to Mr. Galliff is a little less than $3,000, but I did not check the co-defendants.  Getting back to the question that I asked, what I want to just make sure I understand as well as you can advise me is in terms of the oral sentencing proceeding, what statements other than that would be the end of it were made by the judge that you think create ambiguity in the duration of the restitution and not like she was tough on the sentence, so, you know, make some inference. What things were said that you think create an inference, that you think create a conflict or ambiguity with, that would be the end of it? Your Honor, if the Court refers to the sentencing transcript at pages 98 going into page 99, Judge Nimick is talking about the restitution, and I'm going to quote from it. It's almost laughable to think that these defendants are going to be able to pay $6 million in restitution unless they hit the lottery, and it's not likely. But I will require the restitution be included in the supervised release in the amount of $6 million, and you shall pay whatever amount is required by the Probation Department upon his release as well as beginning, upon his release as well as when he's incarcerated. Your Honor, I... So you read that to mean release from supervised release rather than release from prison? Both, Your Honor. And I do submit when you look at the entire record, what you see is that the discussion on restitution being, the Court's focus is when the Court has control over payment of restitution, which is only during the term of supervised release. But there's really no discussion, nor have I ever heard any discussion, about the lien that automatically goes under 3663. And the fact that there's no discussion does not mean that Judge Nimick was ignoring that or that it wasn't going into effect. I would submit that the fact that there's no discussion is because everyone knew how, in fact, the law worked. The Court has assumed to know what the law is and assumed to apply it correctly. Well, you know, can you read that will be the end of it? To mean that will be the end of the payment schedule that's, you know, required on a regular basis, but not that will be the end of the restitution obligation? That's exactly how I think you would read it, Your Honor. It's the end of the Court's control of the supervised release payment obligation. It's not the end of the lien. It's certainly not clear, but at least that's how it struck me as ambiguous, that it might mean that. And that's clearly how Chief Judge Lasnik read it also, since he also found it to be unclear. And I would submit that that factual finding by the Chief Judge is not clearly erroneous. It could be subject to a different interpretation, but it is not clearly erroneous. If the Court has any other questions, I'd be happy to respond. The gentleman has done no investigation, you know, current investigation to see whether he has any assets, whether there's any. As far as we know, he still has nothing. As far as we know, Your Honor. So why are we going through this? I don't understand. Well, I think, Your Honor, the bottom line is that it's a – it's an important issue for the United States that the lien, in fact, does – under the Sentencing Reform Act, the lien goes into effect as soon as the restitution is ordered. And that is a legal concept that we clearly would defend at this Court and at all levels. And second, with regard to Mr. Gallup, there always is the chance that something is going to come down the pike. And clearly, we have an ethical obligation with regard to the victims of this restitution. And we're going to try to collect money, albeit we have not done a great job up to this point in time. We are, if nothing else, relentless. You know, it's all speculative is the problem. I mean, sometimes with con men, they park money somewhere and they get it back at some point. You know, they have friends who are also con men. But it's hard to know if there is anything like that. It's totally speculative. But here's something that's still a concern to me from what you said in connection with Judge Pragerson's inquiry. Are you saying the government doesn't know right now what the payments have been by the other codefendants? No, absolutely. Subject to the same – subject to the same joint and several restitution order? No. Your Honor, what I should have said is prior to coming to oral argument, I did not ask for the printout sheet that set forth what the other codefendants – Well, the thing is, let's just assume – I know this is probably remote, but let's assume that codefendant X had all the cash and in a moment of conscience and reformation tendered it over to the government and paid the $6 million. The obligation would be extinguished, right? Correct. I can tell the Court that the obligation is still in excess of $6 million. So that hasn't occurred. Okay. All right. Thank you, Your Honor. Thank you. We'll give you – We're running out of time. Yeah, I know. I'll give you one minute. Thank you, Your Honor. Not that it's outcome determinative, but I did want to respond – Can I give her a minute, too? I'll give her a minute, too, and that'll be it. Let's see how I do the first one. Section 3663 is permissive. It uses the word may. And so when you say that you believe that Judge Dimmock was just wrong, I'm not sure that I agree with that. I think she was permitted by the law to impose restitution solely as a condition of supervised release under that separate source of authority, the 3583-3563 source of authority, and that she did not need to take advantage of 3663. There was nothing compelling her in a mandatory way to order restitution as a separate freestanding condition. I believe that there is now, and I believe that there has been since 1996, but there wasn't in 1989 or 90. It was entirely permissive. I was just going to get you an extra minute if you needed it. Thank you, Your Honor. I'll save it for the next argument. All right. We'll give you a chip on that. The matter will stand submitted. Very nice arguments of both sides. Very helpful. Thank you. Very nice arguments.
judges: Pregerson, Graber, Gould